# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| National Liability & Fire Insurance Company, <br><br> Plaintiff, <br><br> vs. <br><br> Jeanette M. Samra-Arteaga, Jeanette M. Samra-Arteaga, P.A., Dawn Meehan, Individually and as Personal Representative to the Estate of William Carine, and Steve and Lorraine Weckerle, <br><br> Defendants. | **COMPLAINT FOR DECLARATORY JUDGMENT** <br><br> **(Non-Jury)** |

Plaintiff National Liability & Fire Insurance Company ("National Liability"), by and through its undersigned counsel, complaining of Jeanette M. Samra-Arteaga ("Samra-Arteaga"), Jeanette M. Samra-Arteaga, P.A. ("Law Firm"), Dawn Meehan ("Meehan"), Individually and as Personal Representative to the Estate of William Carine ("Carine"), and Steve and Lorraine Weckerle ("Weckerles"), respectfully alleges and states as follows:

## BACKGROUND

1. National Liability is an insurance company organized and existing under the laws of the state of Connecticut with its principal place of business in the state of Nebraska and writes insurance policies in the state of South Carolina.

2. Defendant Samra-Arteaga is an individual who is a citizen of the state of South Carolina.

3. Defendant Law Firm is a corporation organized and existing under the laws of the state of South Carolina with its principal business in the state of South Carolina.

4. Defendant Meehan is an individual who is a citizen of the state of New Jersey.

5.     Defendant Carine died in Horry County and was a citizen of the state of South Carolina at the time of his passing.

6.     Defendant Meehan is the Personal Representative of Carine's estate.

7.     Defendant Steve Weckerle is an individual who is a citizen of the state of South Carolina.

8.     Defendant Lorriane Weckerle is an individual who is a citizen of the state of South Carolina.

9.     The loss and claims at issue in this case arise out of incidents that occurred in South Carolina. This case involves the interpretation of an insurance policy entered into in South Carolina and that insures interests in South Carolina.

10.    Jurisdiction exists because there is complete diversity of citizenship between National Liability and the Defendants, and the amount in controversy, including the potential costs of defending and indemnifying the Law Firm and Samra-Arteaga, potentially exceeds $75,000.00. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

11.    Venue is appropriate under 28 U.S.C. § 1391 because the policy at issue in this case insures a law firm that is located in this district and was issued in this district.

12.    This is an insurance coverage action brought pursuant to the provisions of the Uniform Declaratory Judgment Act, as codified in 28 U.S.C. §§ 2201-2202, and Federal Rule of Civil Procedure 57 to determine whether National Liability has a duty to defend or indemnify Samra-Arteaga or the Law Firm for all claims related to and arising out of the actions alleged in the underlying lawsuits styled *Dawn Meehan, Individually and as Personal Representative to the Estate of William Carine v. Jeanette M. Samra-Arteaga, P.A. and Jeanette M. Samra-Arteaga* ("Meehan Lawsuit") and *Steve and Lorraine Weckerle v. Jeanette M. Samra-Arteaga, P.A. and Jeanett M.

*Samra-Arteaga* ("Weckerle Lawsuit"), which are both currently pending in the Court of Common Pleas for Horry County, South Carolina. A true and correct copy of the Complaints in the Meehan Lawsuit and the Weckerle Lawsuit are attached as **Exhibits A and B**, and the allegations of the Complaints are incorporated as if fully stated here.

## FACTUAL BACKGROUND

### A. Meehan Lawsuit

13. Meehan filed the Meehan Lawsuit against Samra-Arteaga and the Law Firm seeking damages for the injuries she allegedly sustained arising out the legal services Samra-Arteaga allegedly provided to Carine.

14. Meehan was the stepdaughter of Carine and a beneficiary of his estate.

15. The Complaint filed in the Meehan Lawsuit alleges Carine began exhibiting signs of cognitive impairment in July 2017 and in March 2018 it was determined that he was suffering from dementia and was extremely confused.

16. One of Carine's caregivers recommended Samra-Arteaga to Carine, and he retained Samra-Arteaga for legal assistance.

17. The Complaint includes allegations that Samra-Arteaga provided legal services for Carine after his mental decline in March 2018 including granting a one-half interest in Carine's new condominium to one of his caregivers as a joint tenant with right of survivorship; revoking a power of attorney naming Meehan as his agent; preparing a durable power of attorney, healthcare power of attorney, and living will for Carine all naming his caregiver as his agent; rewriting his will to devise all his real property and additional assets to his caregiver; and preparing an acknowledgement that certain money and property were gifts to the caregiver.

18. Samra-Arteaga charged Carine for her legal services.

3

19.	Meehan alleges Carine was exhibiting diminished capacity and was under undue influence and Samra-Arteaga was not representing the best interests of Carine.

20.	Meehan claims she has suffered monetary damages, loss of enjoyment of Carine's property, mental anguish, emotional distress, and suffering.

21.	Meehan filed the Meehan Lawsuit on December 3, 2021.

22.	On May 5, 2022, Samra-Arteaga filed a Motion to Dismiss in lieu of an Answer.

23.	On November 22, 2022, the Motion to Dismiss was denied.

24.	Samra-Arteaga did not file an Answer and the court entered a default.

25.	On July 24, 2023, counsel for Meehan contacted National Liability to report a claim.

26.	On July 31, 2023, National Liability tried to contact Samra-Arteaga regarding the lawsuit based on information from counsel for Meehan. **Exhibit C.**

27.	National Liability tried to contact Samra-Arteaga at least four more times regarding the lawsuit but did not receive a response from her.

28.	On May 8, 2024, judgement was entered on behalf of Meehan.

29.	On May 8, 2024, Samra-Arteaga contacted National Liability for the first time regarding the claim.  **Exhibit C.**

30.	National Liability retained defense counsel for Samra-Arteaga on May 13, 2024.

31.	Defense counsel for Samra-Arteaga immediately began attempting to contact her regarding their representation of her and the Law Firm and the need for her client files.

32.	National Liability and its attorneys also attempted to contact Samra-Arteaga regarding the Meehan Lawsuit and an insured's responsibilities under the Policy, including sending letters via certified mail and emails on dates:

	a.	May 10, 2024, as **Exhibit D**;

    b.  May 22, 2024, as **Exhibits E and F**;

    c.  July 17, 2024, as **Exhibits G and H**;

    d.  September 4, 2024, as **Exhibits I and J**;

    e.  November 25, 2024, as **Exhibits K and L**;

    f.  April 23, 2025, as **Exhibit M**;

    g.  May 16, 2025, as **Exhibits N and O**; and

    h.  August 19, 2025, as **Exhibits P and Q**.

33. Despite defense counsel's and National Liability's repeated attempts to contact Samra-Arteaga between May 13, 2024 and August 19, 2025, Samra-Arteaga consistently failed to respond to defense counsel and never provided her client files and other necessary information to defense counsel.

34. On July 23, 2025, defense counsel provided by National Liability filed a Motion to Withdraw as counsel for Samra-Arteaga and the Law Firm, which was granted by the Court on September 17, 2025.

35. National Liability subsequently found additional defense counsel to defend Samra-Arteaga.

**B. Weckerle Lawsuit**

36. The Weckerles filed the Weckerle Lawsuit against Samra-Arteaga and the Law Firm on August 29, 2024, seeking damages for the injuries they sustained arising out the legal services Samra-Arteaga allegedly provided to them.

37. The Weckerle Lawsuit alleges Samra-Arteaga was retained by the Weckerles to defend them in a lawsuit asserting fraud and unjust enrichment, seeking declaratory relief, damages, attorney's fees and costs, and disgorgement of title to property.

38. The Weckerle Lawsuit further alleges Samra-Arteaga failed to timely file an Answer on behalf of the Weckerles and to respond to discovery sent to the Weckerles. As a result, the court eventually entered an Order of Default against the Weckerles.

39. Samra-Arteaga failed to notify National Liability of the Weckerle lawsuit. Rather, defense counsel in the Meehan Lawsuit notified National Liability of the Weckerle lawsuit.

40. National Liability retained the same defense counsel as the Meehan Lawsuit for Samra-Arteaga on June 6, 2024.

41. Defense counsel for Samra-Arteaga immediately began attempting to contact her regarding their representation of her and the need for her client file.

42. National Liability and its attorneys also attempted to contact Samra-Arteaga regarding the Weckerle Lawsuit and an insured's responsibilities under the Policy, including sending letters via certified mail and emails on dates:

   a. November 25, 2024, as **Exhibits R and S**;

   b. April 23, 2025, as **Exhibit M**;

   c. May 16, 2025, as **Exhibits N and O**; and

   d. August 19, 2025, as **Exhibits P and Q**.

43. Despite defense counsel's and National Liability's repeated attempts to contact Samra-Arteaga between June 6, 2024 and August 19, 2025, Samra-Arteaga consistently failed to respond to defense counsel and never provided her client file to defense counsel.

44. On July 23, 2025, defense counsel provided by National Liability filed a Motion to Withdraw as counsel for Samra-Arteaga and the Law Firm, which was granted by the Court on September 25, 2025.

6

45. National Liability subsequently found additional defense counsel to defend Samra-Arteaga.

**C. The Policy**

46. National Liability issued a lawyers professional liability policy, policy number LP008046 ("the Policy"), to Jeanette M. Samra-Arteaga, P.A. A true and correct copy of the Policy is attached as **Exhibit T**, and the terms of the policy are incorporated as if fully stated here.

47. The Policy has a limit of liability per claim of $1,000,000.

48. The Policy provides:

A. INSURING AGREEMENT

Subject to all terms and conditions of this Policy, **we** will pay on **your** behalf all **claim expenses** and **damages** up to the Limits of Liability as set forth in the Declarations of this Policy for a **claim** to which this Policy applies that is first made against **you**: (1) during the **policy period**, or (2) during a prior policy issued by us and continuously renewed by the **Named Insured** up to the present **policy period**.

However, this Insuring Agreement shall apply only if:

1. The **claim** arises from a **wrongful act** in the performance of **legal services** by **you** on behalf of the **Named Insured** or any **predecessor firm**, or pro bono **legal services** performed with the knowledge and consent of the **Named Insured** or **predecessor firm,** that occurs after the Policy retroactive date and before the Policy expiration date;

2. The **claim** was reported to **us** during the **policy period**, or if applicable, during the Automatic Extension of Time to Report Claims or Extended Reporting Period;

3. The **claim** was not the subject of any notice previously given to any insurer, nor was the **claim** made under another policy of insurance;

4. The applicable Limits of Liability of this Policy have not been exhausted by the payment of **claim expenses** or **damages**; and,

5. As of the **continuous insurance start date** no **Insured** knew or reasonably should have known of any same or related **wrongful act**, **legal service**, fact, circumstance or adverse outcome that might result in a **claim**.

****

    49.    The Policy includes the following definitions:

B. DEFINITIONS

Wherever used in this Policy:

1. **Claim** means a demand received by **you** for money or services arising from a **wrongful act**. A **claim** shall include, but is not limited to, the service of suit or the institution of an arbitration proceeding against the **Insured** or a request to toll the statute of limitations. **Claim** does not include any criminal proceeding or any proceeding that seeks injunctive, declaratory, equitable or non-pecuniary relief or remedies.

2. **Claim expenses** means:
   a. Reasonable and customary fees for necessary legal work performed by attorneys designated or approved by **us**;

   b. All other reasonable and necessary fees, costs, and expenses approved by **us** and resulting from the investigation, adjustment, defense, and appeal of a **claim**; and,

   c. Premiums for any appeal bond, attachment bond or similar bond in an amount not to exceed the unexhausted Limits of Liability of this Policy, provided that **we** have no obligation to apply for or furnish any such bond.

\*\*\*\*\*

10. **Damages** means the amount that an **Insured** becomes legally obligated to pay as a result of any covered **claim** including, but not limited to, a monetary judgment, award or settlement, and any interest imposed on such judgment, award or settlement, but does not include:

    a. The return or restitution of legal fees, costs or expenses paid to or charged by the **Insured** for **legal services**, no matter whether claimed as a measure of the recovery sought, or as restitution, unearned professional fees, forgiveness of professional fees, forfeiture, financial loss or set-off;

    b. Any civil or criminal:
       (1)    fines, sanctions, penalties, forfeitures;
       (2)    statutory penalties;
       (3)    legal fees;[1]

       \*\*\*\*\*

       imposed or awarded against an **Insured** or any client of an **Insured**, whether pursuant to any federal or state law, statute, regulation, ordinance, court rule or case law;

---

[1] Per the Punitive Damages Endorsement (ATY-1018-00-0122) on the policy, the definition of damages is changed to delete 10.b.(4) and (5) from the definition. Thus, exemplary or punitive damages, and awards designed to punish, deter, regulate conduct, fee shift or penalize, are no longer excluded from the definition of damages.

    c.    The multiplied portion of multiplied awards;

    d.    Any costs incurred to comply with any order for injunctive or non-monetary relief or to comply with an agreement to provide such relief;

    e.    Any amount not insurable under the applicable law;

    f.    **Claim expenses** and any amounts paid under section C. DEFENSE, SETTLEMENT AND SUPPLEMENTARY PAYMENTS, 6. Supplementary Payments; or,

    g.    Any amount ordered to be paid, awarded or costs necessary to comply with any order or ruling in a **disciplinary proceeding**.

\*\*\*\*\*

13. **Legal services** means services provided to others by an **Insured** in the capacity as:

    a.    A lawyer or notary public;

\*\*\*\*\*

14. **Named Insured** means the person or entity designated as such in the Declarations of this Policy.

\*\*\*\*\*

16. **Our**, **we**, **us**, **ours** means the insurance company that appears in the Declarations of this Policy.

\*\*\*\*\*

18. **Policy period** means the period of time between the inception date and time, and the expiration date and time, each as shown in the Declarations of this Policy, or this Policy's earlier termination date and time, if any.

19. **Potential claim** means any wrongful act, fact, circumstance or adverse outcome that you know or reasonably should know might result in a claim.

\*\*\*\*\*

25. **Wrongful act** means any actual or alleged negligent act, error, or omission, or any actual or alleged offense resulting in **personal injury**, in the performance of **legal services** for others by **you**.

26. **You**, **your** or **Insured** means:

    a. The **Named Insured** and any **predecessor firm** specifically named in the Declarations of this Policy;

The following natural persons, but only during the performance of **legal services**:
    (1) Any present partner, principal, officer, director, shareholder, or employed lawyer of the **Named Insured**;

                            \*\*\*\*

50.       The Policy also includes the following condition:

**F.**    **CONDITIONS**

    \*\*\*\*
    1. Notice of Claims

    **You**, as a condition precedent to **our** obligations under this Policy, shall immediately give written notice to **us** during the **policy period**, or if applicable, the Automatic Extension of Time to Report Claims or Extended Reporting Period, of any **claim** made against **you** or of **your** receipt of any notice, summons, complaint or other process, that any personal or entity intends to hold **you** responsible for any **wrongful act**, with full particulars, including at a minimum the following information:

    a. All reasonably obtainable information relating to the time, place and circumstance of the **wrongful act**;
    b. The dates and persons involved;
    c. The identify of anticipated or possible claimants;
    d. The identify of all **Insureds** implicated; and,
    e. The circumstances by which an **Insured** first became aware of the **claim**.

Notice solely to our risk management representative will not constitute notice under this provision.

    \*\*\*\*

    4.    Cooperation and Subrogation

    a.    **You** agree to cooperate with **us** and assist **us** in the investigation, defense and settlement of any and all **claims**, **potential claims** and requests for Supplementary Payments, including but not limited to, promptly providing complete and accurate information which **we** may reasonably require, attending any deposition, hearing or trial as requested by us, assisting in securing and giving testimony, obtaining the attendance of witnesses, and doing nothing to prejudice **our**

ability to investigate, defend or settle any **claim** or **disciplinary proceeding** to which this Policy applies.

****

51.     Samra-Arteaga did not comply with the condition precedent set forth in the Notice of Claim conditions, to include she did not provide proper notice of either the Weckerle Lawsuit or Meehan Lawsuit with the required minimum particulars.

52.     Samra-Arteaga has not provided her client file or any other necessary information to National Liability or defense counsel relating to either the Weckerle Lawsuit or the Meehan Lawsuit.

53.     Defense counsel provided by National Liability to Samra-Arteaga and the Law Firm routinely attempted to contact Samra-Arteaga through phone calls and emails.

54.     Samra-Arteaga did not respond to most communications from defense counsel.

55.     Samra-Arteaga did not provide proper notice of the claim and has failed to cooperate with National Liability and defense counsel in the investigation and defense of the Lawsuits.

56.     National Liability has been prejudiced by Samra-Arteaga's failure to provide proper notice and failure to cooperate.

57.     National Liability is entitled to a judicial declaration that the Policy does not afford coverage to Samra-Arteaga or the Law Firm for the claims asserted in the Meehan Lawsuit and the Weckerle Lawsuit, to include any duty to defend or duty to indemnify.

**FOR A FIRST CAUSE OF ACTION**
**DECLARATORY JUDGMENT**
(Failure to Provide Proper Notice and to Cooperate)

58. The allegations contained in paragraphs 1 through 59 are incorporated as if fully stated here.

59. National Liability seeks a determination from this Court whether it has a duty to defend Samra-Arteaga and the Law Firm under the Policy in connection with the claims alleged against them in the Meehan Lawsuit and the Weckerle Lawsuit.

60. Under the Conditions, the Policy requires the insured to provide proper notice of any lawsuit to National Liability and to cooperate with National Liability in the investigation, defense, and settlement of any claims, including providing complete and accurate information which National Liability requires.

61. The Policy also requires the insured do nothing to prejudice National Liability's ability to investigate, defend, or settle any claim.

62. Samra-Arteaga failed to provide proper notice per the condition precedent set forth in the Policy's Conditions.

63. Samra-Arteaga failed to cooperate with National Liability by not providing her client file or other necessary information for both Lawsuits and by not communicating with defense counsel provided by National Liability.

64. Samra-Arteaga has prejudiced National Liability's ability to provide a defense for her and the Law Firm to include her failure to cooperate causing defense counsel provided by National Liability to withdraw as counsel.

65. Accordingly, the Policy does not provide coverage for the claims asserted against Samra-Arteaga and the Law Firm in the Weckerle Lawsuit and the Meehan Lawsuit.

66.  National Liability does not have any duty to defend or indemnify Samra-Arteaga and the Law Firm in the Weckerle Lawsuit and the Meehan Lawsuit.

WHEREFORE, a justiciable controversy exists between the parties in this action arising out of these claims. Therefore, National Liability asks this Court to construe and determine the rights of the parties and to declare that:

a.  The Policy issued by National Liability to the Law Firm does not provide coverage for the claims asserted in the Weckerle Lawsuit;

b.  The Policy issued by National Liability to the Law Firm does not provide coverage for the claims asserted in the Meehan Lawsuit;

c.  National Liability has neither a duty to defend nor a duty to indemnify the Law Firm or Samra-Arteaga for the claims and damages asserted in the Weckerle Lawsuit; and

d.  National Liability has neither a duty to defend nor a duty to indemnify the Law Firm or Samra-Arteaga for the claims and damages asserted in the Meehan Lawsuit.

National Liability prays that it be granted the relief set forth above, the costs of this action, and any such other and further relief as this Court shall deem just and proper.

s/Shelley Sunderman Montague
Shelley Sunderman Montague, Fed. ID No. 7587
Kendall P. Crawford, Fed. ID No. 13565
Gallivan, White & Boyd, P.A.
Post Office Box 7368
Columbia, SC 29202
smontague@gwblawfirm.com
kcrawford@gwblawfirm.com
(803) 779-1833

***Attorneys for National Liability & Fire Insurance Company***

Columbia, South Carolina
February 3, 2026

13